IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSAN L. GOMEZ,

        Plaintiff,

vs.                                    No. CIV 99-131 LH/LFG

LARRY G. MASSANARI, Acting
Commissioner, Social Security
Administration,[1]

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[2]

Plaintiff Susan L. Gomez ("Gomez") invokes this Court's jurisdiction under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner determined that Gomez was not eligible for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Gomez moves this Court for an order reversing the Commissioner's final decision and remanding for a rehearing.

### Factual Summary and Procedural History

Gomez was born on November 12, 1963 and was 33 years old at the time of the

---

[1]On March 29, 2001, Larry G. Massanari became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d)(1), Mr. Massanari is substituted for Kenneth S. Apfel as the Defendant in this action.

[2]**Within ten (10) days after a party is served with a copy of the legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.**

administrative hearing. She has a high school diploma. Her past work experience was as an office cleaner, cashier, waitress, and mail clerk/courier. She originally applied for DIB and SSI on January 25, 1995. These applications were denied initially and on reconsideration, and Gomez took no further action at that time.

Gomez subsequently reapplied for both DIB and SSI on November 11, 1995, alleging an onset date of October 24, 1994. This second application was again denied initially and on reconsideration, and Gomez requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on April 22, 1997. The ALJ issued his opinion on May 30, 1997, finding that although Gomez cannot return to her past work, she is able to do other work that exists in significant numbers in the national economy and therefore is not disabled. Gomez filed an appeal with the Appeals Council, which denied her request for review on December 3, 1998. This appeal followed.

## **Standards for Determining Disability**

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3] The burden rests upon the claimant throughout the first four steps of this process to prove disability, and if the claimant is successful in sustaining her burden at each step, the burden then shifts to the Commissioner at step five. If at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are: At step one, claimant must prove she is not currently engaged in

---

[3] 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2000); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

[4] 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2000); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

substantial gainful activity;[5] at step two, the claimant must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . .;"[6] at step three, the Commissioner must conclude the claimant is disabled if she proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (2000);[7] and, at step four, the claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[8] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's residual functional capacity ("RFC"),[9] age, education and past work experience, she is capable of performing other work.[10] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove she cannot, in fact, perform that work.[11] In the case at bar, the ALJ made his dispositive determination of non-disability at step five of the sequential evaluation.

---

[5]20 C.F.R. §§ 404.1520(b), 416.920(b) (2000).

[6]20 C.F.R. §§ 404.1520(c), 416.920(c) (2000).

[7]20 C.F.R. §§ 404.1520(d), 416.920(d) (2000). If a claimant's impairment meets certain criteria, that means his impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(a), 416.925(a) (2000).

[8]20 C.F.R. §§ 404.1520(e), 416.920(e) (2000).

[9]The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. §§ 404.1567, 416.967 (2000).

[10]20 C.F.R. §§ 404.1520(f), 416.920(f) (2000).

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

## **Standard of Review and Allegations of Error**

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance. <u>Trimiar v. Sullivan</u>, 966 F.2d 1326, 1329 (10th Cir. 1992. In <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. [Citations omitted].

If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. The Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1486 (10th Cir. 1991).

Gomez contends that the final administrative decision is not supported by substantial evidence and that the Commissioner did not apply the correct legal standards. She claims that the ALJ erred at step three in his finding that Gomez's impairments did not meet the listings for disorders of the spine (§ 1.05) and for affective disorders (§ 12.04), and in his application of the drug abuse provisions of 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J), and 20 C.F.R. §§ 404.1535, 416.935. The Court agrees that the ALJ erred with regard to the listing at § 12.04 and in his application of the drug abuse provisions, in an otherwise thorough and reasoned consideration of Gomez' case.

### **The ALJ Erred in Finding That Gomez Did Not Qualify Under Listing 12.04**

As noted above, if the claimant proves that her impairments meet or are medically equivalent to one of the impairments in the listings, the Commissioner must conclude at step three that she is disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a). The ALJ found that, although Gomez has severe impairments including "dysthymia [depression] secondary to substance abuse, and chronic low back pain," her disorders or combination thereof do not meet or equal the listings. He wrote that "Ms. Gomez' musculoskeletal condition is not accompanied by sufficient motor, reflex or sensory loss to meet the requirements of Section 1.05C," and "[h]er mental disorder is not accompanied by marked disturbance of mood to meet the requirements of Sections 12.04 and 12.09." The Court finds that the ALJ erred in his finding with respect to Listing 12.04; it is therefore unnecessary to consider the 12.09 and 1.05C listings.

To meet the listing at § 12.04, "Affective Disorders," a claimant must show that she has "a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." In order to satisfy the level of severity requirement for a depressive disorder, the claimant must meet the requirements of both subparts A and B:

> A. Medically documented persistence, either continuous or intermittent, of . . . Depressive syndrome characterized by at least four of the following:  a. Anhedonia or pervasive loss of interest in almost all activities; or  b. Appetite disturbance with change in weight; or c. Sleep disturbance; or  d. Psychomotor agitation or retardation; or e. Decreased energy; or  f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or  h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking . . .
> AND
> B. Resulting in at least two of the following:  1. Marked restriction of activities of daily living; or  2. Marked difficulties in maintaining

> social functioning; or   3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or   4. Repeated episodes of deterioration or decompensation in work or work-like settings . . .

Gomez's psychological impairment meets these requirements. The record clearly shows that she suffers from a "disturbance of mood" accompanied by depressive syndrome and that this mood "colors her whole psychic life." Gomez has a history, beginning in her early twenties, of self-mutilation and suicide attempts by means of wrist-slashing and drug overdose. The record reflects such incidents in January 1988, June 1989, May 1993, January 1994, October 1994, November 1994, and January 1997.[12] The record also reflects very little let-up in her persistent overall feelings of depression. *See, e.g.*, notations from her June 1989 hospitalization at Presbyterian (Tr. 427); notes of Dr. Shively, her primary care physician, from April through June 1996 (*e.g.*, "Nervous condition is not improved) (Tr. 454-458); and Progress Notes from the University of New Mexico Mental Health Program, Center on Alcoholism, Substance Abuse and Addictions ("CASAA") from December 1993 to March 1995, and September 1995 to February 1997. These records indicate that Gomez continued to grieve intensely for many years after her mother's death,[13] that she has been diagnosed repeatedly and consistenly with "major depression,"[14] and that in general, her extensive

---

[12] Tr. 122, 140, 150, 172, 367, 416, 419, 435-437, 536.

[13] Tr. 120, 123, 150, 158, 172, 318, 357, 369, 370, 384, 393, 497, 498, 503, 524, 544 ("grief unresolved").

[14] January 12, 1995, Tr. 125; February 8, 1995, Tr. 116; September 20, 1995, Tr. 393; October 12, 1995, Tr. 386; October 30, 1995, Tr. 384; November 12, 1995, Tr. 237; December 20, 1995, Tr. 370; January 3, 1996, Tr. 369; February 14, 1996, Tr. 352; March 4, 1996, Tr. 332 [stating also "chronic depressed mood since childhood"]; March 11, 1996, Tr. 327; March 15, 1996, Tr. 321; March 27, 1996, Tr. 313; April 12, 1996, Tr. 522; May 3, 1996, Tr. 506; May 15, 1996, Tr. 499; May 22, 1996, Tr. 492; May 28, 1996, Tr. 488; June 5, 1996, Tr. 484; June 26, 1996, Tr. 483; August 21, 1996, Tr. 477; September 27, 1996, Tr. 560; November 6, 1996, Tr. 555; November 20, 1996, Tr. 553.

treatment with various antidepressant medication has had little beneficial effect and/or has caused significant side effects.[15] In addition, Gomez has shown, by medical documentation, a persistent depressive syndrome characterized by at least five of the nine symptoms listed in Part A, only four of which are needed to qualify under this subpart:

Anhedonia.

Listing 12.04 defines "anhedonia" as a "pervasive loss of interest in almost all activities." The record establishes that Gomez stays home all day, has no friends or hobbies, is not involved in any groups or civic organizations (except for rare references to sporadic church attendance), that her only activity is cleaning house, and her only source of recreation is watching television.[16]

Gomez lived with her two preteen and teenage daughters throughout the period of the record, but in all of the extensive therapy notes from group and individualized sessions, she barely mentions them and does not describe any involvement in their school or recreational activities, aside from one occasion involving trouble at school. (Tr. 115). Gomez had almost no contact with her family and no friends or social life, aside from occasional brief contacts with an ex-husband and extensive contacts with a verbally and physically abusive boyfriend.[17] In his consultative report, psychiatrist Dr. Michael Dempsey rated Gomez as severely impaired in socialization skills, noting, "[t]he claimant reports she has essentially no social life beyond her children. She does not get along well with her family. She apparently does not socialize with neighbors. She does not attend church and she does

---

[15] Tr. 43, 108, 112, 122, 130, 225, 321, 327, 332, 352, 362, 371, 386, 389, 394, 403, 455, 456, 458, 481, 483, 488, 499, 531, 536, 555, 560.

[16] Tr. 44, 46-47, 90, 102-103, 107, 120, 172, 182, 250, 263-264, 267-268, 396, 404.

[17] Tr. 90, 108-109, 123, 124, 127, 136, 153, 156, 158, 165, 168, 181, 183, 268, 310, 311, 334, 337, 347, 349, 386, 393, 404, 421, 437, 514.

not have a circle of friends." (Tr. 406). This record establishes that Gomez suffers from a "pervasive loss of interest in almost all activities," and her condition therefore meets the listing's definition of anhedonia.

### Appetite disturbance with change in weight.

There are numerous references throughout the record to decreased appetite, one doctor even using the word "anorexia"; on the other hand, there are also many references to Gomez having a weight problem and eating too much; she says, "I eat when I'm sad." (Tr. 355). Her weight fluctuates regularly. The record establishes that she has a consistent problem with appetite disturbance (both increased and decreased) and changes in weight.[18]

### Sleep disturbance.

Gomez's medical records also establish numerous reports of irregular and disturbed sleep, with comments such as "sleep poor," "trouble initiating and staying asleep," "patient is very concerned about lack of sleep," and "insomnia for past 2 nights."[19]

### Decreased energy.

Gomez suffers consistently from low energy.[20] Indeed, there is nothing in the record to show that she ever experiences normal amounts of energy.

### Thoughts of suicide.

The record is replete with notations about "suicidal ideation" or thoughts of suicide and, as

---

[18] Tr. 123 , 313, 332, 327, 344, 355, 363, 370, 393, 403, 477, 480, 483, 484, 488, 534, 555, 560.

[19] Tr. 112, 116, 123, 127, 327, 344, 363, 383, 403, 477, 483, 492, 499, 506, 553, 555.

[20] Tr. 123, 313, 320, 327, 332, 352, 368, 369, 370, 383, 384, 386, 393, 403, 405, 483, 484, 488, 499, 506, 522, 531, 534, 536, 543, 547, 553, 555, 560.

noted above, Gomez has made several overt attempts at suicide.[21] She also stated several times to counselors that she "wished she were dead."[22]

The record also contains references to instances of eruption of other symptoms listed in Part A, including "Psychomotor Agitation" (Tr. 130, "hands tremble a lot"; Tr. 327, restlessness and body jerking; Tr. 403, "occasionally has tremor and anxiety"), "Difficulty Concentrating or Thinking"[23] and "Paranoid Thinking" (Tr. 268, 404, 405). Gomez has met the requirements of Part A of Listing 12.04.

Under Part B, Gomez is required to show that her depressive syndrome resulted in at least two of the following four limitations: (1) marked restrictions in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; or (4) repeated episodes of deterioration or decompensation in work or work-like settings. The record, including an evaluation done by a consulting physician, demonstrates that Gomez has marked difficulties in maintaining social functioning, and severe impairment of pace, persistence, and concentration. There is also indication on the record of repeated episodes of deterioration or decompensation when confronted with stress in work settings.

In his February 1996 report, consulting psychiatrist Dempsey examined Gomez and rated her psychiatric impairments, in the four categories listed in Part B of the Listing, as follows (Tr. 406):

---

[21]Tr. 108, 116, 122, 313, 332, 367, 383, 403, 416, 417, 435-437, 483, 534, 555.

[22]Tr. 122-123, 320, 327, 344, 352, 363, 369.

[23]Tr. 263, 267, 269, 313, 320, 327, 332, 344, 352, 368, 369, 370, 386, 393, 403, 531, 553.

> 1. Activities of daily living: Mild to moderate impairment. The claimant is apparently capable of bathing, dressing and feeding herself. She is capable of doing some driving and shopping but her personal hygiene and grooming is below usual standards.
> 2. Socialization skills: Severe impairment. The claimant reports she has essentially no social life beyond her children. She does not get along well with her family. She apparently does not socialize with neighbors. She does not attend church and she does not have a circle of friends.
> 3. Pace, persistence, and concentration: Moderate to severe impairment. She reports having to rest throughout much of the day. She reports "no energy" and appears discouraged and poorly kept during the examination.
> 4. Adaptation to stress: Severe. She apparently becomes paranoid and irritable when expected to meet deadlines and meet other expectations at paid compensation occupations. She also at times apparently becomes irritable and assaultive.

The ALJ rejected some of this testimony, stating that Dr. Dempsey's conclusion that Gomez was often moody, irritable and assaultive was based on her statement that she assaulted her boyfriend and that he left her because of this, whereas the record shows that the boyfriend was an abuser and Gomez was the victim. (Tr. 23). The ALJ also held that Gomez' restrictions were attributable in large part to her history of drug abuse; this finding is discussed in more detail in a separate section below. A review of the record indicates that the ALJ's rejection of Dr. Dempsey's conclusions is not supported by the evidence.

The record establishes without question that Gomez suffers "marked difficulties in maintaining social functioning," and the ALJ did not challenge Dr. Dempsey's finding that Gomez has no friends, does not socialize with neighbors, does not get along with her family, and belongs to no social groups. Her marked difficulty in the area of social functioning is amply supported by the record, as was discussed earlier in this opinion.

In addition, the record clearly supports Dr. Dempsey's finding that Gomez suffers from severe

10

deficiencies of pace, persistence and concentration, as mentioned earlier. Her ability to concentrate is consistently listed as "poor" in most of the medical records examined. There is no mention in this extensive record, even once, that Gomez ever reads anything. She stated more than once that she does not read (Tr. 102), because she cannot concentrate. (Tr. 102, 263). Her recreational activity consists entirely of watching television (Tr. 90, 120, 250, 263), which does not require a great deal of concentration. She cannot complete a project because "I don't finish what I do," (Tr. 268), and she has difficulty planning her day, because she'll say she's going to do one thing, but then will stop and do something else. (Tr. 269). She has trouble remembering dates. (Tr. 42). She has to read instructions 4 or 5 times before she understands them. (Id.). In the past, she had difficulty concentrating at work, because "I can't finish what I start." (Tr. 270).

In a psychiatric examination dated October 12, 1995, the doctor noted Gomez' reports of depressed mood and increased indecisiveness. (Tr. 386). On January 3, 1996, her doctor noted that her mood was poor, her affect was tearful, and that her mind "loses focus." (Tr. 369). Later that month her doctor wrote, with regard to concentration, that she was "still forgetting." (Tr. 363). In March 1996, her doctor noted that Gomez was "constantly fidgeting" during the examination, and that she reported she was restless and forgetful. (Tr. 327). She reported in a Social Security form that shopping takes a long time, because she starts at one end then forgets to finish. (Tr. 262). In a medical report dated January 27, 1997, Gomez' treating psychiatrist wrote that her depression interferes with her ability to concentrate. (Tr. 531).

With respect to decompensation in work-like settings, the record shows that Gomez has quit jobs in the past when she thought others were "talking about her," (Tr. 40-41, 268, 404 ) and that her failure to engage in compensated work, or any kind of work, was not because she did not want

to work but because she was unable to do so due to her mental condition. (Tr. 119-120, 124, 127, 130, 158, 363, 393).

Thus, at least two of the Part B categories are amply satisfied by record evidence, and the ALJ's contrary conclusion is not supported by the record.

## **The ALJ Erred in His Application of the Drug Abuse Provisions**

If a claimant is found to be disabled but also has a history of drug or alcohol abuse, the ALJ must determine whether the claimant's alcoholism or drug addiction is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); and 20 C.F.R. §§ 404.1535, 416.935. Although the ALJ in this case did not find that Gomez was disabled at step three, he did discuss whether her drug addiction was a contributing material factor, in the context of finding that she did not meet Listing 12.04. He stated (at Tr. 23-24):

> It is difficult on this record to separate any severe psychological restrictions associated with her drug use. In the present case, the claimant's testimony and the documentary evidence of record reveals that many psychologically based function restrictions are associated with the claimant's substance abuse disorder. Thus, while I find that Ms. Gomez has an impairment under Sections 12.04 and 12.09, the fact that she "*often*" has deficiencies of concentration, persistence or pace, and one or two episodes of deterioration or decompensation in work or work-like settings are attributable to her substance abuse. [Emphasis in original].

The ALJ does not supply any basis for his conclusion that many of Gomez' psychologically based function restrictions are associated with her drug abuse disorder. He gives no citations to the record to support this statement. Furthermore, he does not consider the statement of Gomez' treating physician, Dr. Patrick J. Abbott, who wrote in January 1997 that Gomez' "problem of abusing drugs is in remission at this time, but her long standing issues with depression persist and are

not related to her history of drug abuse." (Tr. 531).

Gomez was described by her psychiatrist in March 1996 as suffering from a "chronic depressed mood since childhood." (Tr. 332). Her depression is persistent and severe and, as noted above, does not respond well to antidepressant therapy. Throughout the record, she is consistently described and describes herself as depressed, regardless of her level of involvement with drugs at any given time, whether she was in detox, drug-free on methadone, or relapsing into drug use. There is no indication that Gomez' socialization skills were normal prior to her involvement with illicit drugs. She became pregnant in the ninth grade and says she didn't fit in well at school: "nobody ever liked me so I became like the bully, you know, the beating up on kids and stuff." (Tr. 39). She began to use drugs at the age of 18. (Tr. 41).

The ALJ is correct that it is difficult to determine how much of Gomez' undeniably severe difficulties with social isolation and problems with concentration, persistence and pace are caused by her drug addiction. However, her depression permeates this record and has persisted through years of individual and group therapy, antidepressant treatment, drug abuse and drug abstinence, good times and bad. Her treating physician says that her severe, long-term depression interferes with her ability to function in tasks required by the workplace and is "not related to her history of drug abuse." The ALJ pointed to nothing in the record that contradicts this statement. An ALJ must give substantial weight to the opinion of a claimant's treating physician unless there is good cause to do otherwise, and if the opinion of claimant's own doctor is to be disregarded, the ALJ must set forth "specific, legitimate reasons" for doing so. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). The ALJ in this case failed to set forth such reasons, and the Court finds that the record does not support his conclusion that Gomez' drug addiction was a material factor in her disability.

13

**Conclusion**

The ALJ should have concluded the five-step analysis at Step Three, as the record does not support his finding that Gomez fell short of the requirements for Listing 12.04. Nor did the ALJ point to legitimate reasons, based on specific portions of the record, for rejecting the treating psychiatrist's opinion that the restrictions and limitations suffered by Gomez were caused by her depression, unrelated to drug abuse. When "it is clear from the record that the claimant did not retain the ability to [work] . . . it would serve no useful purpose to remand the case to the Secretary for evidence as to the claimant's vocational options." Jozefowicz v. Heckler, 811 F.2d 1352, 1359 (10th Cir. 1987); *see also,* Harris v. Secretary of Health and Human Servs., 821 F.2d 541, 543 (10th Cir. 1987). The Court will therefore exercise its discretion to recommend a remand for an immediate award of benefits. Nielson v. Sullivan, 992 F.2d 1118, 1122 (10th Cir. 1993).

**Recommended Disposition**

That Gomez' Motion to Reverse or Remand [Doc. 8] be granted and the case be remanded to the Commissioner for an award of benefits.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge